# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS BARWICKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14-cv-8791 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| THOMAS DART, Sheriff of Cook County, et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, an inmate at the Cook County Department of Corrections, alleges that Defendants violated 42 U.S.C. § 1983 when twelve other inmates assaulted Plaintiff. Specifically, Plaintiff claims that three Cook County officers were deliberately indifferent to Plaintiff's safety in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution and that Thomas Dart, the Sheriff of Cook County, is liable for the incident under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978). Defendants move to dismiss Plaintiff's amended complaint [38] for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants in part and denies in part Defendants' motion to dismiss [38]. This case is set for further status hearing on 7/7/2016 at 9:00 a.m.

## I. Background

The following facts are taken from Plaintiff's amended complaint and are accepted as true for the purposes of this motion. Plaintiff was booked and placed in the Cook County Department of Corrections ("Cook County Jail") on July 28, 2010. Plaintiff alleges that on

January 26, 2013, he was physically assaulted by twelve other detainees on Tier 2F of Division 9 of the Cook County Jail. See [37] at ¶¶ 7-15. Plaintiff was watching television when he was approached by the other inmates who informed Plaintiff that he had to take his things and leave the tier. These dozen inmates began threatening Plaintiff with physical violence, causing Plaintiff to approach Defendant John Doe #1, a Cook County Corrections Officer, and notify him of the confrontation. Defendant Doe #1 walked towards Plaintiff on the other side of the tier interlock door with his radio in his hand, but the other inmates "waved [the officer] off." *Id.* at ¶ 12. Defendant Doe #1 then closed and locked the interlock door. Plaintiff was then tripped by one of the other inmates and severely beaten by the other inmates as he lay on the floor. Plaintiff was transported to Mount Sinai Hospital for treatment. *Id.* at ¶ 20. Plaintiff sustained the following injuries from the beating: his two top incisors were knocked out during the altercation, which subsequently caused an abscess to form resulting in oral surgery, he still suffers from pain and sensitivity in his mouth, and he has a persistent ringing in his ears. *Id.* at ¶¶ 22-24.

According to Plaintiff's amended complaint, Defendant Doe #1 witnessed the beating, but did nothing to stop the other inmates from beating Plaintiff. Plaintiff alleges that two other corrections officers—Defendant Doe #2, who was also assigned to Tier 2F, and Defendant Doe #3—witnessed the altercation, as well. None of the three John Doe Defendants took steps to protect Plaintiff. *Id.* at ¶¶ 16-19.

Plaintiff filed a grievance sometime between January 26, 2013 and February 26, 2013. During the grievance process, Plaintiff was informed that he was not assisted by the three Doe Defendants because "a fight was occurring elsewhere in the facility" and that those three officers "were waiting for assistance before assisting Plaintiff." *Id.* at ¶ 21.

In Count I of the Amended Complaint, Plaintiff alleges that the three officers were deliberately indifferent to Plaintiff's safety in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution and 42 U.S.C. § 1983. See *id.* at ¶ 33. In Count II, Plaintiff alleges that Sheriff Dart was deliberately indifferent to Plaintiff's safety because the Sheriff was aware of the Jail's alleged policy of not intervening in altercations between inmates, failed to adequately staff the Cook County Jail, failed to implement policies designed to protect inmates from other inmates, and failed to adequately supervise and train Jail staff. *Id.* at ¶¶ 40-42.

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff's complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief."

*Twombly,* 550 U.S. at 558. The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011).

**III. Analysis**

Defendants move to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiff fails to state a claim for which relief can be granted because (1) a single incident is not sufficient for a *Monell* claim and (2) Plaintiff's complaint is barred by the applicable statute of limitations. The Court considers those arguments in turn.

**A. Whether a Single Incident is Sufficient for a *Monell* Claim**

As described above, Plaintiff has asserted a *Monell* claim against Sheriff Tom Dart. [37] at ¶¶ 34–46. In *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities are "persons" for purposes of 42 U.S.C. § 1983, and thus may be liable for violations of civil rights, so long as the municipality has adopted a policy or custom that violated the plaintiff's constitutional rights. Defendants insist that Plaintiff's *Monell* claim should be dismissed because Plaintiff's allegations "amount to a single incident" and that "in order to impute knowledge to policymakers of a widespread practice, a plaintiff must show a pattern of constitutional violations; not a single act of misconduct." [38] at 1. Such an argument misapprehends Plaintiff's complaint and the relevant precedent.

To state a *Monell* claim, Plaintiff must plead factual content that would allow the Court to plausibly infer that: (1) he has suffered the deprivation of a constitutional right; and (2) that an official custom or policy of Sheriff Dart caused that deprivation. See *McCauley,* 671 F.3d at 616; *Monell,* 436 U.S. at 694–95.[1] As for the latter element, Plaintiff will have to establish that his constitutional violation was "caused by (1) an express municipal policy; (2) a widespread,

---

[1] As discussed above, *Monell* claims are subject to the pleading standard set out by the Supreme Court in *Twombly* and *Iqbal*, see *McCauley v. City of Chicago,* 671 F.3d 611, 615 (7th Cir. 2011) (citing *Iqbal,* 556 U.S. at 678, and *Twombly,* 550 U.S. at 570).

though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone v. City of Monroe, Wis.,* 665 F.3d 774, 780 (7th Cir. 2011) (quoting *Darchak v. City of Chicago Bd. of Ed.*, 580 F.3d 622, 629 (7th Cir. 2009)). In order to allege a widespread policy, the Supreme Court and the Seventh Circuit have both looked for circumstances demonstrating that municipal officials were deliberately indifferent to known or obvious consequences of the municipality's action or inaction. See *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (citing *Harris*, 489 U.S. at 389). *Monell* does not allow for liability on a theory of *respondeat superior* or vicarious liability. See, *e.g., Milestone,* 665 F.3d at 780. Instead, "units of local government are responsible only for their policies, rather than misconduct by their workers." *Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007) (quotation marks and citation omitted).

Plaintiff has alleged facts sufficient to make out the first prong of a *Monell* claim. His complaint adequately alleges that he suffered a constitutional deprivation when the three officers at CCDOC were deliberately indifferent to Plaintiff's safety in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution and 42 U.S.C. § 1983. As described above, Plaintiff pleads a plausible set of facts in which the officers did not come to Plaintiff's aid when twelve other inmates attacked him.

Defendant relies heavily on *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007), for the proposition that an officer does not have a duty to break up a fight between inmates when doing so would put that officer in jeopardy. See [38] at 2. In *Guzman*, the Seventh Circuit considered a pre-trial detainee's appeal of summary judgment for his Section 1983 claims against the Sheriff of Cook County and Cook County Jail officers. See *Guzman*, 495 F.3d at

853. The Seventh Circuit pointed out that "the Due Process Clause protects pre-trial confinees like [] Guzman from deliberate indifference to his safety and welfare." *Id.* at 857 (citing *Butera v. Cottey*, 285 F.3d 601 (7th Cir. 2002)). "Prison officials who had actual awareness of a substantial risk to the health or safety of an inmate incur no liability if they 'responded reasonably to the risk, even if the harm ultimately was not averted, because in the case it cannot be said that they were deliberately indifferent.'" *Id.* (quoting *Peate*, 294 F.3d at 882).

The Seventh Circuit has addressed "what constitutes sufficient information to put an officer on notice that a specific threat exists as to a particular inmate." *Guzman*, 495 F.3d at 857. The Seventh Circuit in *Guzman* contrasted the plaintiff's circumstances with those of the plaintiff-inmate in *Peate v. McCann*, 294 F.3d 879 (7th Cir. 2002), whose first beating by other inmates was broken up by the prison guards, only to have the plaintiff-inmate suffer another beating by the same inmates using the same weapons. In *Peate*, the Seventh Circuit reversed the district court's grant of summary judgment to the defendants, in part, because the first beating gave the prison guards specific knowledge of the substantial risk to the plaintiff's safety. See *Guzman*, 495 F.3d at 858 (discussing *Peate*, 294 F.3d at 883). "A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy." *Id.* (citing *Peate*, 294 F.3d at 883).

Putting to one side the fact that *Guzman*, *Peate*, and *Butera* were all decided at summary judgment, here, the relevant allegations do not suggest that the corrections officers refused to break up the fight because they feared for their own safety, but rather because of some tacit agreement between the corrections officer and the inmates who had decided to assault Plaintiff. The complaint relates that "Defendant Doe #1 began walking towards the tier interlock door with

6

his radio in his hand" and "Plaintiff began walking towards the interlock door *when the other individuals waved off Doe #1*." See [37] at 2 (emphasis added). Plaintiff's complaint suggests that Defendant Doe #1 somehow acquiesced to the signal of the inmates. Of course, the evidence may show that Defendant Doe #1 feared for his own safety or that he was waiting for backup, but at this stage of the case the Court must accept the allegations in the complaint as true and it cannot consider factual assertions outside the confines of the complaint or draw inferences in Defendants' favor. Accordingly, the Court reads the complaint to allege an incident not like *Guzman*, but one that could involve actionable conduct or inaction by the Defendant officer.

As for the second prong of the *Monell* claim, Defendants maintain that "Plaintiff cannot convert this single incident into a *Monell* claim." See [38] at 4. Defendants cite a slew of Seventh Circuit precedent for this proposition, including *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008), *Estate of Moreland v. Dieter*, 395 F.3d 747, 760 (7th Cir. 2005), and *Jackson v. Marion Cnty., Ind.*, 66 F.3d 151, 152 (7th Cir. 1995). Those cases are not on point. *Grieveson* and *Dieter* dealt with appeals of summary judgment, not motions to dismiss, and hence fail to help the Court arrive at a decision.

And the other case that Defendants cite, *Jackson*, actually cuts in Plaintiff's favor. There, the Seventh Circuit criticized a district court for requiring a complaint to contain *more* specificity about pattern evidence. See *Jackson v. Marion Cty.*, 66 F.3d 151, 152-53 (7th Cir. 1995). Like the *pro se* litigant's claims in *Jackson*, Plaintiff will need to prove his *Monell* claim "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government * * * adopt[ed] the misconduct of subordinate officers." See *Jackson,* 66 F.3d at 152 (citation omitted). Like the litigant in *Jackson*, Plaintiff is in no position, prior to discovery,

7

to make allegations about Sheriff Dart's investigations into other cases of inmate-on-inmate violence or the effect on other inmates on the Sheriff's alleged failure to train his officers.

Moving beyond Defendant's opening brief, Defendants are correct that at summary judgment Plaintiff's single incident cannot give rise to a *Monell* claim. While the Seventh Circuit "has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice." *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) (citing *Thomas v. Cook Cnty. Sheriff's Dept.,* 604 F.3d 293, 303 (7th Cir. 2010)). See also *Gable v. City of Chicago,* 296 F.3d 531, 538 (7th Cir. 2002); *Cosby v. Ward,* 843 F.2d 967, 983 (7th Cir. 1988).

Here, Plaintiff need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists. Plaintiff's single incident *can* give rise to a *Monell* claim if Plaintiff pleads that that incident is representative of other intra-inmate violence at the Cook County Jail and that such violence was caused by a widespread pattern or practice by Sheriff Dart. Plaintiff's pleadings allege that these incidents of intra-inmate violence are frequent at the Cook County Jail because "[i]t is impossible for DOC staff to protect inmate safety if there are not enough staff members on duty to do so. [37] at ¶ 39. Indeed, Plaintiff refers to multiple incidents when he pleads that "there is a policy of DOC staff not intervening in altercations between inmates, even who those incidents are witnessed by DOC staff." *Id.* at 40.

Of course, Plaintiff's pleadings must be plausible. Staying within the four corners of Plaintiff's complaint, it is certainly plausible that altercations among inmates are numerous in the largest jail in the United States. In that regard, Plaintiff's complaint is sufficient: he alleges that Sheriff Dart "is responsible for setting all policies and procedures with regard to the conduct of

DOC staff and their management/operation of the DOC facilities," thus satisfying *Monell* on the grounds that Sheriff Dart has "final policymaking authority. See [37] at ¶ 38. Sheriff Dart operates the Cook County Department of Corrections. See *DeGenova v. Sheriff of DuPage Cnty.,* 209 F.3d 973, 976 (7th Cir. 2000) ("Illinois sheriffs have final policymaking authority over jail operations); *id.* at 976 n.2 (recognizing that "the Sheriff's office has a legal existence separate from the county").

Plaintiff also alleges that Sheriff Dart created an environment that "allowed the harm to Plaintiff to occur" by "failing to adequately supervise and train DOC staff," "failing to adequately staff DOC facilities," and "failing to implement policies and procedures designed to protect inmates from other inmates." [37] at ¶¶ 42, 41. "An unconstitutional municipal policy can take the form of an implicit policy or a gap in expressed policies." *Dixon v. Cty. of Cook*, ___ F.3d ___, 2016 WL 1393527, at *3 (7th Cir. Apr. 8, 2016) (quotation marks and citation omitted). Plaintiff alleges further that Sheriff Dart's failures have occurred in spite of the fact that the Sheriff is "aware that DOC facilities are understaffed" and that these "facilities present a significant risk to the safety of inmates because they are inadequately staffed." *Id.* at ¶¶ 38, 39.

The Sheriff's alleged failure to train and supervise his employees in this respect could constitute a policy or custom if it "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Canton*, 489 U.S. at 388). The Supreme Court in *Connick* identified two ways Plaintiff can show the Sheriff's deliberate indifference to his constitutional rights: (1) through "[a] pattern of similar constitutional violations by untrained employees" or (2) by establishing that his false arrest and illegal detention were "highly predictable consequence[s]" of failing to train and supervise county employees on their record-keeping responsibilities. *Id*. at

62-64. At the pleading stage, Plaintiff need not choose between these two methods of proving deliberate indifference, nor must he plead a prima facie case under either framework. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To sum up, Plaintiff need not plead that he was assaulted on several occasions to plead a *Monell* claim. Plaintiff need only plead that the alleged incident is one of many occurring in the Cook County Jail and that a widespread practice by Sheriff Dart gave rise to those incidents. With this complaint, he has done so. The plaintiff's factual allegations, taken as true, adequately state a *Monell* claim that is plausible on its face. Thus, dismissal of Plaintiff's *Monell* claim against Sheriff Dart would be inappropriate on that basis.

### B. Whether Plaintiff's Complaint is Barred by Statute of Limitations

The Court now considers whether any or all of Plaintiff's other claims are barred by the relevant statute of limitations. Plaintiff filed his initial complaint on November 3, 2014 [1], putting forth similar allegations under Section 1983 based on the January 26, 2013 incident. Section 1983 does not provide a time limit within which a claim may be brought. The Supreme Court and the Seventh Circuit have instructed the Court to look to the law of the state in which the cause of action arose, using that state's general statute of limitations for personal injury torts. See *Wallace v. Kato,* 549 U.S. 384, 387 (2007); *Williams v. Lampe,* 399 F.3d 867 (7th Cir. 2005). For Illinois, that limit is two years. See 735 Ill. Comp. Stat. Ann. 5/13-202 (West 2016). After the Court was able to secure representation for the previously *pro se* Plaintiff, Plaintiff filed the operative amended complaint [37] on December 4, 2015—well beyond the two-year statute of limitations for an incident that occurred on January 26, 2013.

As the background of this case illustrates, identifying the individual officers who would be proper defendants in Section 1983 prisoner litigation can be a challenging and time-

consuming task for all involved. In the first instance, if the plaintiff does not know the officers by name, he must provide sufficient information to defense counsel or to others at the facility where the incident occurred to enable the identification of the universe of officers who were on duty in the relevant place at the relevant time. Once that information is provided to the plaintiff, sometimes in the form of a attendance sheets or even a photo array, the plaintiff usually is able to identify the proper party and to amend his complaint to add that party as a defendant. The case law explains that this should be a cooperative process in which the Court and defense counsel assist the plaintiff at least in identifying the proper parties to the lawsuit. See, *e.g.*, *Bryant v. City of Chicago*, 746 F.3d 239, 244 (7th Cir. 2014) (reiterating the need to provide *pro se* prisoners with "assistance in seeking to identify the officers' names"); *Donald v. Cook County Sheriff's Dep't.*, 95 F.3d 548, 554 n.1 (7th Cir. 1996) (recognizing "measures which the district court could have taken, short of appointment of counsel, to assist [a *pro se* prisoner plaintiff] in identifying and naming the proper defendants in a timely fashion"); *Billman v. Indiana Dep't of Corrs*, 56 F.3d 785, 790 (7th Cir. 1995) (noting that when a *pro se* prisoner is attempting to identify defendants "it is the duty of the district court to assist him, within reason, to make the necessary investigation").

However, it is imperative that the plaintiff also help himself by filing his lawsuit as promptly as possible and then expeditiously engaging in the give-and-take that often is necessary to identify the proper defendant officer from among the hundreds of employees who work at the facility where the plaintiff is incarcerated. As explained below, Plaintiff here waited until late in the limitations period to sue and then took no action to start the ball rolling on identifying the unknown officers—a course of inaction that may have fatally impaired his ability to maintain any claims against those potential defendants.

Cognizant of the fact that Plaintiff here had identified three "John Doe" officers in his initial complaint, and applying the "extra measure of grace" that courts often accord to incarcerated *pro se* litigants, see *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 597 (7th Cir. 2006); *Donald*, 95 F.3d at 553-55, the Court included the following discussion in its initial screening order [5], which was entered one week after the complaint appeared on the docket:

> When a plaintiff does not know the names of the persons who actually injured him, the law permits the court, at the pleading stage, to make an inference of responsibility on the part of the defendants' immediate supervisor. See *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981); *Billman v. Indiana Dept. of Corrections*, 56 F.3d 785, 789-90 (7th Cir. 1995). Accordingly, Sheriff Dart remains as a defendant solely so that Plaintiff may discover the identities of the proper defendants. Once an attorney has entered an appearance on Dart's behalf, Plaintiff must send defense counsel interrogatories (that is, a list of questions) eliciting information regarding the identities of the proper individuals who allegedly violated Plaintiff's constitutional rights. See Fed. R. Civ. P. 33. After Plaintiff learns their identities, he may submit an amended complaint that names them as the proper defendants. Summonses will then issue for service on these defendants, and Sheriff Dart will be dismissed as a defendant.

In addition, having observed that the incident giving rise to Plaintiff's complaint more than twenty-one months earlier, the Court advised Plaintiff in the screening order [5] that "there is a two year statute of limitations for his claims and the limitations period began running when the incident occurred" and that he "must submit a proposed amended complaint identifying the Doe [Defendant(s)] within the statute of limitations period to proceed against him."

That advice followed from a straightforward application of long-established Seventh Circuit case law regarding the identification of the proper parties to the lawsuit and the inability of the "relation back" doctrine to salvage claims against defendants who are not identified within the limitations period. See, *e.g.*, *Jackson v. Kotter*, 541 F.3d 688, 699 (7th Cir. 2008); *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 597 (7th Cir. 2006); *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th

Cir. 1998); *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993); *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980). And the Seventh Circuit has confirmed that, absent the extraordinary relief of equitable tolling, the "extra measure of grace" given to *pro se* prisoner filings does not extend to the failure to identify the proper party within the limitations period. *Jackson*, 541 F.3d at 699 (rejecting relation back argument and explaining that while *Donald* allowed relation back where the plaintiff fails to "differentiate between the proper *type* of defendant – that is, individuals as opposed to government entities" – it "did not change our stance on actions against unknown defendants"); *King*, 201 F.3d at 914 ("We have consistently held that Rule 15(c)(3) does not provide for relation back under circumstances . . . in which the plaintiff fails to identify the proper party"). Thus, as the Court explained, it was imperative that Plaintiff get to work on identifying the "John Doe" defendants as soon as possible, including by sending a discovery request to defense counsel as soon as one appeared on behalf of Sheriff Dart.

Here, the record is clear that as of the date on which the statute of limitations expired, the only named Defendant was Sheriff Dart. Accordingly, under the line of cases cited above, any claims that Plaintiff may have against individual defendant officers (other than Sheriff Dart himself) would be time barred unless equitable tolling applies to save those claims. "If despite the exercise of reasonable diligence [the plaintiff] cannot discovery his injurer's (or injurers') identity within the statutory period, he can appeal to the doctrine of equitable tolling to postpone the deadline for suing until he can obtain the necessary information." *Bryant*, 746 F.3d at 243. In this case, because Illinois's statute of limitations applies, Illinois's equitable tolling principles apply as well. *Id*. "Illinois does not toll the statute of limitations for inmates" as a matter of course, "nor does it consider a lack of resources extraordinary to equitably toll the statute of limitations." *Id*. at 242. The Seventh Circuit has noted that "Illinois case law does not define

13

'reasonably diligent,' but our cases supply some contours of a definition." *Id*. at 243. The examples given by the court focus on motions that a *pro se* incarcerated litigant can file prior to the expiration of a statute of limitations – for instance, a motion that would help him identify the defendants or even a motion that directly affects his ability to file a claim, such as a motion for leave to proceed *in forma pauperis*. *Id*. (citing *Donald*, 95 F.3d at 562; *Williams-Guice v. Bd. of Educ.*, 45 F.3d 161, 164-65 (7th Cir. 1995)). In *Bryant*, the court of appeals held that equitable tolling applied where the plaintiff had written letters, filed FOIA requests, and filed a motion to compel the defendant to disclose the identities of the two unnamed police officers – all before the expiration of the limitations period for at least two of his claims. *Id*. at 242-44.

Unfortunately for Plaintiff here, the principles articulated in *Bryant* provide very little assistance. At most, the Court could find support in *Bryant* to toll the limitations period for the week between the filing of Plaintiff's initial complaint and the Court's ruling on Plaintiff's application for leave to proceed *in forma pauperis* and motion for attorney representation. But that week turns out to be of no consequence, because there is nothing in the record to indicate any of the types of diligent action that might support a longer period of equitable tolling. Despite the Court's warning as to the looming statute of limitations and suggestion to send a list of questions to defense counsel, it does not appear that Plaintiff took any action prior to (or even shortly after) the limitations period expired. To be sure, by the time counsel filed an appearance for Sheriff Dart, only a few weeks remained before the two-year limitations period lapsed. But that, too, is largely a consequence of Plaintiff's own inaction, for he (inexplicably) waited until more than seven-eighths of the limitations period had run before filing suit. Still, Plaintiff had more than two months after the Court issued its November 10, 2014 order [5], and two weeks after defense counsel appeared, see [8], [9], [10], to start looking for information about the

identities of the proper defendants. Had he engaged in any (or all) of the measures undertaken by the plaintiff in *Bryant*, his argument for equitable tolling would be persuasive. Indeed, had Plaintiff even sent a letter to defense counsel, as suggested by the Court, he might have a good argument for a longer tolling period. But without any initiative on Plaintiff's part (beyond requesting counsel), the Court cannot find that Plaintiff acted in a "reasonably diligent" manner under even the most relaxed definition of that phrase.[2]

The Court recognizes (and appreciates) the work that Plaintiff's recruited counsel has performed in investigating all avenues available to Plaintiff. The Court shares counsel's frustration with the fact that it took four invitations to the Trial Bar before current counsel agreed to take the case. The Court also understands the disappointment inherent in being asked to try to resurrect claims that turn out to have been time barred long before counsel became involved in the case. It is true, as counsel points out, that it would not be a difficult task even today to serve interrogatories to identify the officers present on January 26, 2013, when Plaintiff allegedly was assaulted. But for the reasons stated above, the Seventh Circuit consistently has held that, even for incarcerated *pro se* litigants, it is too late to try to identify a proper party defendant after the limitations period has run. Nevertheless, even if those claims cannot be brought, recruited counsel has performed a valuable service in advocating on behalf of his client and assisting the Court in evaluating Defendant's arguments for dismissal of any such claims.

The Court notes that Plaintiff's time-barred claims against the individual officers do not necessarily affect Plaintiff's *Monell* claim. The Seventh Circuit has suggested that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a

---

[2] Even if the Court had immediately requested that a member of the Trial Bar accept appointment as counsel in this case, that lawyer would have needed to obtain from Plaintiff the very same information that Plaintiff himself could have provided to defense counsel.

finding would create an *inconsistent* verdict." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010).

## IV. Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendants' motion to dismiss [38]. This case is set for further status hearing on 7/7/2016 at 9:00 a.m.


Dated: June 22, 2016

_____
Robert M. Dow, Jr.
United States District Judge